UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIELLE D. FOUNTAIN,

     Plaintiff,                      Case No. 2:20-cv-11300
                                   District Judge Arthur J. Tarnow
v.                              Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.      Introduction

This is a social security case.  Plaintiff Gabrielle D. Fountain brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 16, 17), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Fountain is not disabled under

1

the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for

Summary Judgment (ECF No. 17) be GRANTED, Fountain's Motion for

Summary Judgment (ECF No. 16) be DENIED, and that the ALJ's decision be

AFFIRMED.

## II.     Background

### A. Procedural History

Fountain was 52 years old at the time of her alleged date of onset of May 16,

2017.  (ECF No. 13, PageID.215).  This is her second application for DIB.[1]  She

worked as a secretary, administrative assistant, account clerk, and secretary

receptionist from 1997 through 2013.  (*Id*., PageID.245).  She alleged disability

due to lumbar spine discectomy surgery, diabetes, depression, and anxiety.  (*Id*.,

PageID.129).

After Fountain's DIB application was denied at the initial level on June 29,

2018 (*Id*., PageID.128-139), she timely requested an administrative hearing, which

was held on April 1, 2019, before the ALJ.  (*Id*., PageID.74-103).  Fountain

testified at the hearing, as did a vocational expert (VE).  (*Id*.).

---

[1] Fountain first applied for DIB in August of 2015, alleging disability as of
September 30, 2013, due to similar impairments of lumbrosacral pain, diabetes
mellitus, depression, and anxiety.  (*Id*., PageID.64, 107, 112-113).  An ALJ issued
an unfavorable decision on May 15, 2017.  (*Id*., PageID.102-121, 242-244).  The
Appeals Counsel denied review.  (*Id*.).  Fountain did not seek judicial review.  (*Id*.,
PageID.64).  She filed the instant application the day after the first ALJ's decision.

2

Fountain testified that she lived with her husband.  (*Id.*, PageID.80-81).  She completed high school, but never attended college or received any vocational training.  (*Id.*, PageID.82-83).  Fountain stopped working in 2013.  (*Id.*, PageID.83).  Her most recent job was working as a secretary in a correctional facility.  (*Id.*).  The job ended and Fountain chose not to look for another job because her back problems were causing difficulty sitting.  (*Id.*, PageID.85-86).

Fountain stated that she could not work.  (*Id.*, PageID.86).  She "[couldn't] even think straight" and some days she struggled to get out of bed.  (*Id.*, PageID.86-87).  She felt like she could no longer "handle stuff."  (*Id.*, PageID.87).  Fountain had difficulty sleeping and often lay in bed "thinking about stuff."  (*Id.*, PageID.90).  She also suffered from frequent crying spells brought on by stress and had anxiety attacks "[e]very few days."  (*Id.*, PageID.90-91).  Fountain began seeing a mental health provider approximately one week before the hearing.  (*Id.*, PageID.92-93).

Fountain further stated that her degenerative disc disease was "getting worse again" and that she woke up during the night because she was experiencing back pain.  (*Id.*, PageID.87).  She also experienced right leg pain that caused her not to feel her foot.  (*Id.*, PageID.87-88).  Her left leg was also beginning to hurt and go numb "on the outside of [her] thigh."  (*Id.*).  Additionally, she injured her right

knee while walking.  (*Id*., PageID.89-90).  She had Osgood-Schlatter's disease[2] in her left knee.  (*Id*.).  Fountain used a cane for ambulation.  (*Id*., PageID.93-94).

Fountain also suffered from hypertension.  (*Id*., PageID.91-92).  If she forgot to take her medication, which happened "a lot lately," then she would suffer from "really bad headache[s]."  (*Id*.).  Fountain explained that she frequently forgot things.  (*Id*., PageID.92).

On May 23, 2019, the ALJ issued a written decision finding that Fountain was not disabled.  (*Id*., PageID.58-69).  On March 26, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.47-51).  Fountain timely filed for judicial review of the final decision.  (ECF No. 1).

## B. Medical Evidence

As noted above, Fountain previously applied for DIB and, as such, medical evidence was included in her file that predates her current onset date of May 16, 2017.  For the purposes of this section, the discussion of medical evidence will focus on records dated May 16, 2017, or later.

---

[2] "Osgood-Schlatter disease can cause a painful, bony bump on the shinbone just below the knee.  It usually occurs in children and adolescents experiencing growth spurts during puberty."  https://www.mayoclinic.org/diseases-conditions/osgood-schlatter-disease/symptoms-causes/syc-20354864 (last accessed July 1, 2021).

On December 28, 2017, Fountain had MRIs of her knees.  (ECF No. 13, PageID.334-338.).  The right knee "[f]indings [were] suggestive of minimal chondromalacia involving the apex of the patella with possible inflammation involving the lateral margin of the bipartite patella."  (*Id*., PageID.334-335)  The left knee "[f]indings [were] most consistent with prior Osgood-Schlatter syndrome with evidence of some underlying continued inflammatory change within the tibial tubercle as well as what appears to be low-lying or peritransplant within the Hoffa's fat pad.  These changes may be associated with the patellofemoral traction abnormality."  (*Id*., PageID.337-338).

On September 20, 2018, Fountain had an appointment with Shawn R. Gerrity, P.A., to establish care for her multiple chronic medical conditions.  (*Id*., PageID.436).  Fountain's medical conditions included hypertension, type 2 diabetes, constipation, and depression that was characterized as "mild."  (*Id*.).  In addition to these medical conditions, Fountain also was diagnosed with urinary tract symptoms, chronic bilateral low back pain with bilateral sciatica, and lumbar spondylolysis.  (*Id*., PageID.438).

On December 17, 2018, Fountain returned to Gerrity.  (*Id*., PageID.444).  She explained that she was experiencing "moderate" back pain.  (*Id*.).  Fountain's depression was characterized as "moderate."  (*Id*., PageID.444-445).  On January 17, 2019, Fountain followed up with Gerrity.  (*Id*., PageID.453).  Fountain reported

5

that she was "still struggling with depressive symptoms," but that she "ha[d] not started counseling." (*Id*.).  Fountain also reported that she was still experiencing back pain that occurred "intermittently" and that the pain "ha[d] been waxing and waning since onset." (*Id*.).

  III. Framework for Disability Determinations (the Five Steps)

  Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively

presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Fountain was not disabled under the Act.  At Step One, the ALJ found that Fountain had not engaged in substantial gainful activity "during the period from her alleged onset date of May 16, 2017 through her date last insured of December 31, 2017." (ECF No. 13, PageID.64).  At Step Two, the ALJ found that she had the severe impairments of degenerative disc disease, obesity, and arthritic knees.  (*Id.*)  At Step Three, the ALJ found that Fountain's impairments, whether considered alone

7

or in combination did not meet or medically equal a listed impairment.  (*Id*.,

PageID.65).

The ALJ then assessed Fountain's residual functional capacity (RFC),

concluding that she was capable of performing sedentary work, "except the

claimant could occasionally climb ramps and stairs, never climb ladders, ropes, or

scaffold, and occasionally balance, stoop, kneel, crouch, and crawl.  Lastly, the

claimant could never be exposed to unprotected heights and dangerous moving

machinery."  (*Id*., PageID.66).

At Step Four, the ALJ found that Fountain could perform her past relevant

work as a secretary, accounting clerk, and administration assistant based on the

testimony of the VE and the state agency medical consultant, Larry Jackson, M.D.

(*Id*., PageID.68).  According to the VE, all three jobs, secretary, accounting clerk,

and administration assistant, were classified as sedentary.  (*Id*., PageID.99).

However, the secretary work as it was performed was classified as light work.  (*Id*.,

PageID.98-99).  Dr. Jackson "found the claimant could lift and carry 10 pounds

occasionally and 10 pounds frequently, sit for six hours in and [sic] eight-hour

workday, and stand and/or walk for two hours in an eight-hour workday.  Dr.

Jackson further found that the claimant could never climb ladders, ropes, or

scaffolds, but otherwise occasionally perform postural activities, and would have

8

to avoid all exposure to hazards." (*Id.*, PageID.68).  As a result, the ALJ

concluded that Fountain was not disabled under the Act.  (*Id.*, PageID.69).

IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g).  Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that

10

error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

V.    Analysis

Fountain argues that the ALJ failed to thoroughly discuss all of the medical

conditions that she suffers from and, thus, incorrectly determined she was capable

of performing any work.  Fountain highlights three areas that were insufficiently

addressed by the ALJ: (1) Fountain's degenerative disc disease and knee problems,

(2) Fountain's long history of depression and anxiety, and (3) Fountain's account

of the pain she suffers.

A. Degenerative Disc Disease and Knee Problems

Fountain first argues that her degenerative disc disease had become

significantly worse over time and that the MRIs revealed new problems with her

knees, both of which were insufficiently addressed by the ALJ.

In his opinion, the ALJ highlighted the fact that Fountain's treatment for her

degenerative disc disease since May of 2017, "largely consisted of conservative

medication management."  (ECF No. 13, PageID.67).  Additionally, she did not

appear to have received any specialized treatment for her degenerative disc disease

during the relevant period.  (*Id*.).  This militates against a finding of disability.  *See*

*McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, No. 99-3400, 2000 WL 687680,

11

at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.")

Fountain did not cite to any evidence, either objective or subjective, to support her argument that her degenerative disc disease had significantly worsened.  Accordingly, Fountain's argument on this matter should be deemed waived.  *See Frazier v. Comm'r of Soc. Sec.*, No. 19-cv-11097, 2020 WL 1856202, at *10 (E.D. Mich. Mar. 11, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."), *adopted sub nom. Frazier v. Saul*, 2020 WL 1847923 (E.D. Mich. Apr. 13, 2020).  However, as noted above, the ALJ did consider the medical evidence relating to her degenerative disc disease, finding it insufficient to establish that her condition had significantly worsened since her prior application was denied.  *See* ECF No. 13, PageID.67.

The ALJ also addressed the MRIs of Fountain's knees.  (*Id.*).  However, he noted that "the record [did] not support limitations greater than [was] provided in the previous residual functional capacity test."  (*Id.*).  This was because Fountain, as was the case for her degenerative disc disease, "ha[d] received largely conservative treatment since the prior Administrative Law Judge's decision, and

there was a minimal amount of time that lapsed between the prior period under adjudication and the current period at issue." (*Id*.). *See McKenzie*, at \*4.

Other than pointing to the MRIs, which the ALJ did address, Fountain only points to her own testimony about her knees causing difficulty walking.  However, the ALJ limited Fountain to sedentary work.  Fountain does not explain how she would be unable to perform sedentary work.  Because of the underdeveloped nature of this argument, it should be deemed waived as well. *See Frazier*, at \*10. Again, waiver aside, the ALJ did consider the results of the MRIs, concluding that they were not sufficient to show her condition had progressed since her last application to warrant a finding of disability.

## B. Depression and Anxiety

Fountain next argues that her medical records demonstrate her depression and anxiety were more severe than the ALJ found.

The ALJ found that Fountain's "medically determinable mental impairments of affective and anxiety disorders, considered singly and in combination, did not cause more than minimal limitation in [Fountain's] ability to perform basic mental work activities and were therefore non-severe."  (ECF No. 13, PageID.64).  The only medical records for the relevant period support the ALJ's conclusion. Fountain did not see a mental health specialist, and the notes from Gerrity only indicate that Fountain suffers from mild to moderate depression.  *See Calvin v.*

*Astrue*, No. 3:05–0109, 2010 WL 55452, *17 (M.D. Tenn. Jan. 7, 2010)
(determining that substantial evidence supported ALJ's conclusion that diagnosed
anxiety was not severe because claimant "never sought any mental health treatment
or counseling and never had been hospitalized for a mental condition.").

     The ALJ also relied on the opinion of the state agency psychological
consultant, Barbara Jones Smith, Ph.D., who "found the claimant's psychological
impairments were non-severe, with no more than mild limitations understanding,
remembering, or applying information, interacting with others, concentrating,
persisting, or maintaining pace, or adapting or managing oneself."  (*Id.*,
PageID.68).  As the ALJ highlighted, Dr. Smith's opinion was consistent with the
medical evidence and was, thus, "persuasive."  (*Id.*).  *See McGrew v. Comm'r of
Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (holding that an ALJ may properly
rely upon as substantial evidence the opinions of a reviewing state agency medical
consultant (citing 20 C.F.R. § 404.1527(f)(2)(i)).  Accordingly, the medical
evidence supports the ALJ's determination regarding the lack of severity of
Fountain's depression and anxiety.

## C. Pain

     Finally, Fountain argues that the pain arising out of her medical conditions
precludes her from working.

14

The Social Security Regulations establish a two-step process for evaluating a claimant's subjective symptoms, including pain.  20 C.F.R. § 404.1529(a); SSR 16-3p.  According to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it – formerly termed a "credibility" determination – can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that SSR 16-3p merely eliminated "the use of the word 'credibility' . . . to 'clarify the subjective symptoms evaluation is not an examination of an individual's character.' ").

The ALJ must first confirm that objective medical evidence of the underlying condition exists, and then determine whether that condition could reasonably be expected to produce the alleged pain, considering other evidence, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side-effect of any medication; (5) treatment, other than medication received; (6)

15

any means used to relieve pain; and (7) other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

Here, the ALJ found that Fountain had severe impairments that could produce pain, but found "[a]s for [Fountain's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because treatment notes since the prior Administrative Law Judge decision dated May 15, 2017, fail to demonstrate the claimant's condition significantly worsened such that she would be as incapacitated as alleged." (ECF No. 13, PageID.67). The ALJ thus considered both Fountain's testimony and the medical evidence when making this determination. Overall, there is not a compelling reason to disturb the ALJ's determination regarding Fountain's pain, especially when considering her cursory argument on the subject.

Therefore, the ALJ did not err when he determined that Fountain was not disabled under the Act because he properly considered Fountain's physical and mental conditions as well as her subjective complaints of pain.

## VI.   Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion be GRANTED, Fountain's motion be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED, in accordance with this opinion.

16

Dated: July 8, 2021                           s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

17

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 8, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager